UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SCOTT MATHEWS, | § | No. SA:14–CV–566–DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| CITY OF SAN ANTONIO; | § | |
| T. DAVIDSON, INDIVIDUALLY; | § | |
| N. MARTE, INDIVIDUALLY; AND | § | |
| S. KURTWATH, INDIVIDUALLY, | § | |
| | § | |
| Defendants. | § | |

ORDER GRANTING DEFENDANT CITY OF SAN ANTONIO'S MOTION TO
DISMISS

Before the Court is a Motion to Dismiss Pursuant to Rule 12(b)(6)
filed by Defendant City of San Antonio ("Defendant.")  (Dkt. # 6.)  On December
11, 2014, the Court heard oral argument on the Motion.  Mark Sanchez, Esq.,
appeared at the hearing on behalf of Plaintiff Scott Mathews ("Plaintiff"); Michael
Siemer, Esq., appeared at the hearing on behalf of Defendant City of San Antonio;
Nathan Ralls, Esq., appeared at the hearing on behalf of the individual defendants.
After reviewing the Motion and the opposing memorandum, and considering the
parties' arguments at the hearing, the Court **GRANTS** Defendant's Motion to
Dismiss.  (Dkt. # 6.)

1

BACKGROUND

On or about April 14, 2013, Plaintiff and his wife ("Mrs. Mathews") were together in their home.[1]  (Dkt. # 1 ¶ 7.)  Plaintiff, who suffers from depression, had been drinking.  (Id.)  Plaintiff told his wife "he wanted to feel hurt" and asked her to punch him.  (Id.)  Mrs. Mathews became very upset, and called Plaintiff's parents to ask them to come over and help her.  (Id.)  Some time later, Mrs. Mathews heard a car outside the house and went to the door, believing that Plaintiff's parents had arrived.  (Id.)  When Plaintiff and his wife opened the door, they saw three flashlights and heard a screaming voice instructing them to put their hands up.  (Id.)

Defendant Tessa Davidson ("Davidson") approached Plaintiff and put one hand on Plaintiff's shoulder and the other near his elbow, and Defendant S. Kurwath ("Kurwath") did the same on Plaintiff's other side.[2]  (Id.)  Kurwath then "pushed [Plaintiff] straight to the ground."  (Id.)  Plaintiff alleges he fell face first, and that Davidson, Kurwath, and Defendant Narciso Marte ("Marte") (collectively, the "individual defendants") then handcuffed him and hit him repeatedly as he lay on the ground.  (Id.)  While Mrs. Mathews protested, Plaintiff claims that Kurwath

---

[1] As the Court is required to construe the facts in the light most favorable to the non-moving party and accept Plaintiff's allegations as true, the Court here recites the facts as stated in Plaintiff's complaint.

[2] Defendants Davidson, Kurtwath, and Marte were San Antonio Police Officers at all times material to this suit.  (Dkt. # 1 ¶¶ 4–6.)

"jumped on [Plaintiff's] upper back and had his knees and all of his body weight on [Plaintiff's] upper back." (Id.)  Plaintiff also claims that as they beat him, the individual defendants continually taunted him with profane language.  (Id.)

The individual defendants eventually stopped the beating and realized Plaintiff was bleeding.  (Id.)  Plaintiff was taken to the hospital, where he remained in intensive care for a month and spent an additional month in a rehabilitation center.  (Id.)  Plaintiff claims that as a result of the individual defendants' actions, he sustained serious injuries including a subdural hemorrhage, a torn bridging vein, partial paralysis, swelling in his brain, and numerous bruises and lacerations.  (Id. ¶ 8.)  Plaintiff alleges that he offered no resistance at any point during the incident. (Id. ¶ 7.)

On June 24, 2014, Plaintiff filed this lawsuit, bringing claims against Defendant pursuant to 42 U.S.C. § 1983 under a theory of municipal liability.  (Id. ¶ 19.)  Plaintiff claims that Defendant is liable because "it sanctioned the custom, practice, and/or policy or procedure of illegal seizures [and] excessive force."  (Id.) Plaintiff further claims that "assault, beating, and severe injury to citizens, with little or no justification, is a persistent, widespread practice of city employees . . . that, although not authorized by officially adopted policy, is so common and well settled as to constitute a custom that fairly represents official city policy."  (Id.) Plaintiff states that Defendant had "actual or constructive knowledge of this

practice, custom, and/or policy or procedure." (Id.)  Plaintiff also alleges that Defendant had actual or constructive knowledge of numerous prior incidents of police officers using excessive force; according to Plaintiff, this establishes a custom and Defendant's "accession to that custom by . . . their policy makers." (Id.)

In the alternative, Plaintiff argues that Defendant is liable under § 1983 for failing to adopt a policy precluding officers from beating or assaulting citizens.  (Id.)

Finally, Plaintiff also alleges that Defendant is liable under § 1983 for inadequate training of police officers.  (Id. ¶20.)  Specifically, Plaintiff claims that the police officer training program is inadequate "in the respect that the program fails to teach new police persons that beating and/or using excessive force against citizens violates citizens' constitutional rights."  (Id.)

On August 20, 2014, Defendant filed the instant Motion to Dismiss. (Dkt. # 6.)  On September 9, 2014, Plaintiff filed a response.  (Dkt. # 10.)

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).  Review is limited to the contents of the complaint and matters properly subject to judicial notice.  See Tellabs, Inc. v.

<u>Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007).  In analyzing a motion to dismiss for failure to state a claim, "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  <u>In re Katrina Canal Breaches Litig.</u>, 495 F.3d 191, 205 (5th Cir. 2007) (quoting <u>Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit</u>, 369 F.3d 464, 467 (5th Cir. 2004)).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555.  The statements in the complaint must be sufficiently detailed to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Id.</u>

DISCUSSION

Defendant moves for dismissal under Rule 12(b)(6) because Plaintiff has failed to demonstrate that (1) a policy, practice, custom or procedure existed; (2) the governmental policymakers actually or constructively knew of its existence;

5

(3) a constitutional violation occurred; and (4) the custom or policy served as the moving force behind the alleged violation.  (Dkt. # 6 ¶ 1.)

A municipality is a "person" subject to suit under § 1983.  Zarnow v. City of Wichita Falls, Tex., 614 F.3d 161, 166 (5th Cir. 2010) (citing Monell v. N.Y.C.  Dep't of Soc. Servs., 436 U.S. 658, 690 (1978)).  A local government may be sued "if it is alleged to have caused a constitutional tort through a 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'"  Id. (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 121 (1988)).  Municipal liability may also attach where the constitutional deprivation was attributable to a government custom, even if the custom has not received formal approval from the government entity.  Id. (citing Monell, 436 U.S. at 690–91).

"[M]unicipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom."  Id. (quoting Piotrowski v. City of Hous., 237 F.3d 567, 578 (5th Cir. 2001)).  "A municipality may not be subject to liability merely for employing a tortfeasor."  Id. at 167.  Instead, "[m]unicipal liability requires deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation."  Id.  The Court addresses each of the three elements in turn.

I.    <u>Policymaker</u>

      First, a plaintiff must plead sufficient facts to show that "an official policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of the municipality." <u>Zarnow</u>, 614 F.3d at 167.  A policymaker is a person or entity "who has 'the responsibility for making law or setting policy in any given area of a local government's business.'" <u>Valle v. City of Hous.</u>, 613 F.3d 536, 542 (5th Cir. 2010) (quoting <u>Praprotnik</u>, 485 U.S. at 125)).  Whether an official possesses final policymaking authority for purposes of municipal liability is a question of state and local law.  <u>Id.</u> (citing <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 482 (1986)).

      Here, Plaintiff has not identified any specific policymaker responsible for the policy which caused the alleged constitutional violation, but simply makes a vague reference in passing to "[Defendant's] policy makers."  (Dkt. # 1 ¶ 19.) Plaintiff's complaint could be read to allege that Defendant itself is the policymaker.  (<u>See</u> <u>id.</u>)  However, the City of San Antonio does not qualify as a "policymaker" under the standard articulated by the Fifth Circuit.  The city itself does not set policy for the police department.  As a general matter, the city council sets policies for the city.  <u>See</u> San Antonio City Charter, art. I § 2 ("all powers of the city shall be vested in an elective council . . . which shall enact local legislation [and] determine policies.").  Furthermore, the police department is under the

control of the city manager.  Id., art. V § 50(4).  See also Bolton v. City of Dall.,
541 F.3d 545, 550–51 (5th Cir. 2008) (looking in part to the city charter of Dallas
to determine which persons or entities held policymaking power over the police
department).

Because he has not identified any specific policymaker other than
perhaps the City of San Antonio itself, Plaintiff has not pled sufficient facts to
survive a motion to dismiss on his municipal liability claim.  See, e.g. Chalmers v.
City of Dall., No. 3:14–CV–36–N, 2014 WL 1778946, at *3 (N.D. Tex. May 5,
2014) (dismissing claim where plaintiff failed to identify a policymaker); Pivonka
v. Collins, No. 3:02–CV–742–G, 2002 WL 1477455, at *4 (N.D. Tex. July 5,
2002) ("[t]he court agrees with the City's contention that the plaintiffs' failure to
plead specific facts on [the policymaker] element of a § 1983 claim renders the
plaintiffs' complaint defective . . . . [T]here is abundant case law in this circuit that
a plaintiff must identify a policymaker in a § 1983 action against a municipality.");
see also Piotrowski, 237 F.3d 579 (noting that identifying a policymaker "is not an
opaque requirement").

Although Plaintiff's failure to identify a policymaker is fatal to his
complaint, the Court will address the remaining two prongs below for the sake of
thoroughness.

II.     <u>Official Policy</u>

Next, a plaintiff must plead the existence of an official policy. Official policy may arise in two forms.  <u>See</u> <u>Peterson v. City of Fort Worth, Tex.</u>, 588 F.3d 838, 847 (5th Cir. 2009).  First, it may exist in the form of "written policy statements, ordinances, or regulations" promulgated by the municipality's policymakers.  <u>Id.</u>  Second, it may also arise "in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'"  <u>Id.</u> (quoting <u>Webster</u>, 735 F.2d at 841).  Here, Plaintiff alleges that the individual defendants' actions were part of a customary practice sanctioned by Defendant.  (Dkt. # 1 ¶ 19.)  In the alternative, Plaintiff claims Defendant is liable for failing to adopt a policy precluding officers from beating and/or assaulting citizens.  (<u>Id.</u>)  Finally, Plaintiff also claims Defendant is liable under § 1983 for inadequate training of police officers.  (<u>Id.</u> ¶ 20.)

A.     <u>Custom Fairly Representing Municipal Policy</u>

Plaintiff first alleges that the individual defendants' actions were part of a "customary practice and/or policy or procedure" sanctioned by Defendant. (<u>Id.</u> ¶ 19.)  A plaintiff may prove the existence of a policy or custom in two different ways.  First, a plaintiff may show a pattern of unconstitutional conduct on the part of municipal actors or employees who are not policymakers.  Second, a plaintiff may show that a final policymaker took a single unconstitutional action.

9

Zarnow, 614 F.3d at 169.  Because Plaintiff's complaint alleges unconstitutional conduct on the part of individual police officers, only the first method is applicable here.

At the motion to dismiss stage, "only minimal factual allegations should be required" in § 1983 suits against municipalities, and "those allegations need not specifically state what the policy is, as the plaintiff will generally not have access to it, but may be more general."  Thomas v. City of Galveston, 800 F. Supp. 2d 826, 843 (S.D. Tex. 2011); see also Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit, 507 U.S. 163 (1993) (rejecting the Fifth Circuit's then-existing heightened pleading requirement in § 1983 cases alleging municipal liability).  Nevertheless, "a plaintiff suing a municipality must provide fair notice to the defendant, and this requires more than genetically restating the elements of municipal liability."  Thomas, 800 F. Supp. 2d at 844–45. "Allegations that provide such notice include, but are not limited to, past incidents of misconduct to others, multiple harms that occurred to the plaintiff himself, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy." Id. (footnotes omitted).

In this case, Plaintiff's complaint alleges that "the assault, beating, and severe injury to citizens, with little or no justification, is a persistent, widespread practice of city . . . police officers."  (Dkt. # 1 ¶ 19.) Plaintiff's complaint also alleges, without elaboration, that Defendant knew of "numerous prior incidents of police officers using excessive force upon citizens." (Id.)  This language and these allegations are too broad and too vague to survive a motion to dismiss.  See, e.g., Thomas, 800 F. Supp. 2d at 845 (granting the defendant city's motion to dismiss where the plaintiff simply asserted a pattern of constitutional violations); Weathered v. Dall. Cnty., No. 3:10–CV–781–B–BK, 2010 WL 4781300, at *4 (N.D. Tex. Nov. 3, 2010) adopted by No. 3:10–CV–781– B–BK, 2010 WL 4783024 (N.D. Tex. Nov. 23, 2010) (finding plaintiff did not state a cause of action against defendant city and county where plaintiff simply alleged the defendants had policies and customs that resulted in the constitutional violation suffered).  Indeed, courts have required substantial showings of prior misconduct to support claims of a pattern of unconstitutional conduct.  See, e.g., Peterson, 588 F.3d at 851 (finding district court did not err in holding that 27 complaints against the defendant city were insufficient to establish a pattern of condoning excessive force); Alfaro v. City of Hous., No. H–11–1541, 2013 WL 3457060, at *13 (S.D. Tex. July 9, 2013) (noting that in addition to a list of instances of misconduct, the Fifth Circuit requires plaintiffs to provide context

with information about the police department's size or the total number of arrests; furthermore, the incidents must be sufficiently similar to warrant an inference of a pattern).  Therefore, Plaintiff has not pled sufficient facts to establish the existence of a custom that resulted in the alleged constitutional violation he suffered.

      B.    <u>Failure to Adopt Policy</u>

In the alternative, Plaintiff argues that Defendant is liable for failing to adopt a policy precluding police officers from beating and/or assaulting citizens. (Dkt. # 1 ¶ 19.)  A failure to adopt an official policy may serve as the basis for § 1983 liability only if the omission is an "intentional choice" amounting to "subjective deliberate indifference."  <u>Brumfield v. Hollins</u>, 551 F.3d 322 (5th Cir. 2008) (citing <u>Rhyne v. Henderson Cnty.</u>, 973 F.2d 386, 392 (5th Cir. 2002)).  "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights."  <u>Porter v. Epps</u>, 659 F.3d 440, 446 (5th Cir. 2011) (quoting <u>Rhyne</u>, 973 F.2d at 392).

Here, Plaintiff alleges that Defendant is liable for failing to adopt a policy precluding officers from beating and/or assaulting citizens.  (Dkt. # 1 ¶ 19.) Plaintiff further alleges that this failure constitutes an "intentional choice."  (<u>Id.</u>) Taking Plaintiff's allegations as true, as it must when ruling on a motion to dismiss, the Court finds that the failure to adopt such a policy plausibly amounts to

deliberate indifference.  It is obvious that the absence of a policy preventing police officers from beating or assaulting citizens will in some instances result in a deprivation of constitutional rights.[3]  Nonetheless, because Plaintiff has failed to identify a policymaker, Plaintiff has not pleaded sufficient facts to state a claim for municipal liability under § 1983.

      C.     <u>Failure to Train</u>

      Finally, Plaintiff alleges that Defendant is liable under § 1983 for inadequate training of police officers.  (Dkt. # 1 ¶ 20.)  To state a claim for municipal liability under § 1983 for failure to train or supervise, a plaintiff must allege (1) the supervisor either failed to supervise or train a subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to "deliberate indifference."  <u>Estate of Davis v. City of N. Richland Hills</u>, 406 F.3d 375, 381 (5th Cir. 2005).  To satisfy the "deliberate indifference" prong, a plaintiff must demonstrate both (1) a pattern of violations and (2) that the inadequacy of the training is obvious and obviously likely to result in the constitutional violation.  <u>Id.</u>

      Here, Plaintiff's complaint alleges that Defendant's training programs for new officers are inadequate because they "fail[] to teach new police persons

---

[3] The Court notes that the City in fact does have such a policy.  However, when ruling on a motion to dismiss, the Court is confined to the allegations in the pleadings.

that beating and/or using excessive force against citizens violates citizens' constitutional rights." (Dkt. # 1 ¶ 20.)  Plaintiff states that the training deficiency caused the individual defendants' violation of Plaintiff's constitutional rights, and that Defendant's failure to train amounts to deliberate indifference.  (Id.)  The Court finds that Plaintiff cannot establish the deliberate indifference prong.  As discussed above, Plaintiff has pled no specific facts suggesting a pattern of violations that could give rise to the inference that Defendant was deliberately indifferent to the risk that constitutional violations would result from the alleged training deficiency.  Again, Plaintiff makes a vague reference to "numerous prior incidents," but this allegation is not specific enough to survive a motion to dismiss. The Court finds that Plaintiff has not pleaded sufficient facts to state a claim for failure to train police officers.

III.    Moving Force Behind Alleged Constitutional Violation

Finally, a plaintiff must plead sufficient facts to establish that the policy was the moving force behind the alleged constitutional violation.  "In other words, a plaintiff must show direct causation."  Peterson, 558 F.3d at 848.  In this case, Plaintiff alleges that a "customary practice and/or policy or procedure," sanctioned by Defendant, "deprived Plaintiff of his civil rights."  (Dkt. # 1 ¶ 19.) Plaintiff also alleges that "the deficiency in training actually caused the Individual Defendants to violate Plaintiff's constitutional rights."  (Id. ¶ 20.)  If Plaintiff's

allegations were proven true, it is plausible that Defendant's policies or alleged failure to train its employees were the "moving force" behind the alleged constitutional violation suffered by Plaintiff.  However, because Plaintiff has not identified a policymaker responsible for the harm suffered, he has not made sufficient allegations to state a claim for municipal liability under § 1983.

<u>CONCLUSION</u>

For the reasons stated above, the Court hereby **GRANTS** Defendant's Motion to Dismiss.  (Dkt. # 6.)  Plaintiff's claims against the City of San Antonio are hereby **DISMISSED** without prejudice.

**IT IS SO ORDERED.**

**DATED:**  San Antonio, Texas, December 11, 2014.

_____

David Alan Ezra
Senior United States Distict Judge

15